JDeaderick, J.,
delivered the opinion of the Court.
The plaintiff in error was convicted at the July 'Term, 1871, of the Circuit Court of Giles county, of stealing a mule.
Motions for a new trial and in arrest of judgment •were severally made and overruled; and the court pro *453 ceeded to pronounce the judgment of death upon the defendant, from which he has appealed in error to this court.
The indictment charges that Green Turner, on the 5th day of September, 1870, in the county of Giles, aforesaid, feloniously did steal, take, and carry away, one bay mare mule, of the value, &c.
For the plaintiff in error, it is insisted that the judgment should be reversed, because the jury in their verdict did not find what punishment the defendant below should undergo, for the offense of which they convicted him; and the case of Kirby v. The State, 7 Yer., 259, is cited, as sustaining this proposition.
There is no analogy between that case and this; and the reasons that required in that case that the jury should find more than a simple verdict of guilty as charged in the indictment do not exist in this. That was an indictment for murder, which, under our statutes, consists of two degrees, murder in the first degree, and murder in the second degree, and the punishment in the one case is different from the punishment in the other, and it is made by statute the duty of the jury to ascertain in their verdict whether the offense charged is murder in the first or second degree.
By the Act of 17th May, 1865, it is provided “that whoever shall feloniously take or steal any horse, mule, or ass, shall, on conviction thereof, suffer death by hanging: Provided, the jury before whom the offense is tried shall, if they think proper, commute the punishment to imprisonment in the penitentiary for a *454 period of not less than ten, nor more than twenty-one years.”
The law annexes the punishment of death by hanging to. the offense of stealing a horse, mule or ass, but the jury may, if they think proper, commute the punishment. If in their verdict they do not exercise their ■ discretion in the commutation of the punishment, it of course stands as prescribed by the Act, a conviction of an offense punishable with death, to be enforced by the judgment of the court.
There was, therefore, no error in the verdict of the jury, or judgment of the court, for the reason assigned in the exception just considered.
The jury manifestly, purposely abstained from the commutation of the punishment provided by the statute, as they were instructed in the charge of the judge that they had the right to commute the punishment as provided in the statute, which he read to them; and he further told them that if they found the prisoner guilty, as charged in the indictment, without saying more, the legal effect of their verdict was, that the defendant would be hung.
Another objection is taken to the proceedings in the court below, that the court in his charge read the statute upon which the indictment was founded, the record reciting the fact that he read it, and showing by reference to the power of the jury to commute the punishment, and the legal effect of the simple finding of guilty as charged, &c. What statute" was read? We do not think there was such error in this to authorize a reversal. No error is affirmatively shown, and it is well settled by *455 numerous adjudications, that this court will not reverse, unless it is shown affirmatively that error has been committed. While we can not reverse for this alleged error, we are of opinion that the rule referred to, which restrains us from reversing, ought not to be construed as authorizing a partial omission, or imperfect statement, of the history of the trial below, but that the record should exhibit as fully and clearly as practicable, what was in fact done, in the court below; and when a statute or other law is read to the jury, it should be so specified by quotation or otherwise as to preclude mistake in this court, as to what was so read to the jury.
The indictment charges the defendant with stealing “one bay mare mule,” and defendant insists that the proof shows it was a “red sorrel mule.”
The testimony of two witnesses, one being the owner, describes the mule as a “bay,” while one of the two says some people would call it sorrel, but he considered it a “'bay.” Three other witnesses describe it as a “red sorrel.”
The court told the jury that “the indictment alleges the mule to be a bay, and it must be proven to be the color stated,” “and if the proof shows the mule to be a sorrel, it is a fatal variance.” The jury found from the proof it was a bay, and we can not say they were in error in so finding. There was evidence to support the verdict, and from the testimony of one of the witnesses, the difference between a bay and sorrel is so shadowy that it can hardly be said to be incorrect to call it the one color or the other. *456 It is not like the marked and well defined difference between white and black.
Bat the mule is described in the indictment not only as a “bay/’ but as a “bay mare mule.”
Under the Act of May 17th, 1665, it would have been sufficient to have described the subject of the larceny simply as a “mule.” Then the color and sex would have been wholly immaterial, if the identity had been otherwise established.
But the terms “bay mare” having been used as descriptive of the mule, although unnecessarily so used, they become material averments and must be proved. Where a person or thing, necessary to be mentioned in an indictment, is described with unnecessary particularity, all the circumstances of the description must be proved, for they all are made essential to the identity. Thus in an indictment for stealing a blaoh horse, the animal is necessarily mentioned, but the color need not be stated, yet if it is stated, it is made descriptive of the particular animal stolen, and a variance in the proof of the color is fatal: 1 Gr. on Ev., § 65, citing 1 Stark. Ev., 374, Rosc. Cr. Ev., 102-3; 2 Rus. on Crimes, 788.
In a case cited, Rosc. Cr. Ev., 103, the prisoner was indicted for killing a mare, the proof showed it was a colt without specifying the sex, and it was held not sufficient to support the charge of killing a mare. No allegation in an indictment, whether necessary or unnecessary, which is descriptive of the identity of that which is legally essential to the charge in the indictment, *457 can be. rejected as surplusage, but must be proved as laid.
There is no testimony in tbe record to support the averment of the indictment that the mule stolen was a mare mule; on the contrary, there is testimony tending to show that it was a horse.
The prosecutor, who was owner of the mule, upon his examination, whenever he used any language indicating the sex of the mule, employed the masculine pronoun '‘'him,” which he did frequently in the progress of his examination as a witness. Other witnesses used the same term, and none use any term or make any reference to the mule which would indicate that it was a mare. So far, then, as there is any testimony upon this point, its tendency is not to sustain, but to disprove the averment in the indictment that the animal was a mare mule.
For this reason, we reverse the judgment and remand the cause.